## Exhibit B

[Executory Contracts]

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

## TRANSITION MANAGEMENT AGREEMENT

This Transition Management Agreement (the "Agreement") is made this 26th day of June 2017 (the "Effective Date"), by and between **Wordsworth Academy**, a Pennsylvania nonprofit corporation with an address at 3300 Henry Avenue, Falls Center, Philadelphia, PA 19129 ("Prospective Subsidiary"), and **Public Health Management Corporation**, a Pennsylvania nonprofit corporation with an address at Centre Square East, 1500 Market Street, Suite 1500, Philadelphia, PA 19102 ("PHMC"). Prospective Subsidiary and PHMC will be referred to individually as a "Party" and together as the "Parties" herein.

WHEREAS, Prospective Subsidiary is an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code") that is exempt from federal income tax pursuant to Section 501(a) of the Code whose mission is to provide quality education, treatment, and care to children and families with special needs and will become a subsidiary of PHMC pursuant to an affiliation agreement executed by and between Prospective Subsidiary and PHMC on June 26, 2017 ("Affiliation Agreement"); and

WHEREAS, PHMC is an organization described in Section 501(c)(3) of the Code that is exempt from federal income tax pursuant to Section 501(a) of the Code whose mission is to, among other things, provide assistance for health care activities, public health services, and other related activities, and will become the sole member of Prospective Subsidiary; and

WHEREAS, Prospective Subsidiary has requested that PHMC provide and PHMC has agreed to provide management, information technology, computer usage, and training services to Prospective Subsidiary as of the Effective Date and pending the potential change in control in the Prospective Subsidiary contemplated by the impending Affiliation Agreement and the Chapter 11 proceedings set forth in the Affiliation Agreement (the "Related Chapter 11 Proceedings").

WHEREAS, the Parties have discussed that Prospective Subsidiary intends to file a Chapter 11 petition following the implementation of this Agreement, and that Prospective Subsidiary intends to file a motion to assume this Agreement at the same time as the petition is filed.

NOW, THEREFORE, the Parties, intending to be legally bound hereby, covenant and agree as follows:

## 1. LIMITATION OF DUTY

Prospective Subsidiary hereby engages PHMC and PHMC agrees to provide the Services (as defined in Section 3(a)) on behalf of, and for the account of, Prospective Subsidiary in accordance with the terms of this Agreement. Prospective Subsidiary hereby acknowledges and agrees that the activities of PHMC pursuant to this Agreement are not intended and shall not be construed to relieve persons serving, from time to time, as Prospective Subsidiary's directors, officers, and employees of their fiduciary duties, if any, to Prospective Subsidiary pursuant to the Pennsylvania Nonprofit Corporation Act of 1988, any other federal or state law or regulation, or any obligations and/or duties that they owe to Prospective Subsidiary pursuant to Prospective Subsidiary's policies and procedures and/or any agreement with Prospective Subsidiary.

## 2. TERM AND TERMINATION

3829658 4

1

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

(a) Term. The term of this Agreement shall be for a period commencing on the Effective Date and extending through November 1, 2017 (the "Initial Term") and, provided that the Related Chapter 11 Proceedings remain open, shall automatically extend on a monthly basis at the end of the Initial Term until otherwise terminated as provided for herein.

(b) Optional Termination for Failure to Timely Consummate Affiliation Agreement. If within one hundred eighty (180) days of the Effective Date, PHMC has not become the sole member of Prospective Subsidiary pursuant to a new management agreement executed by the Parties in connection with the Affiliation Agreement and the Related Chapter 11 Proceedings, then at the option of either Prospective Subsidiary or TPFC, either party may terminate this Agreement upon notice to the other.

(c) Termination Generally. This Agreement shall terminate immediately upon the earlier of (i) the date a new management agreement is executed between the Parties as contemplated by the Affiliation Agreement and the Related Chapter 11 Proceedings; (ii) upon Prospective Subsidiary's receipt of written notice from PHMC that PHMC has determined, in its sole discretion, that Prospective Subsidiary has failed or is unable to pay the Fees (as defined in Section 5(a)); or (iii) the mutual termination of an intent to establish an affiliation relationship between the Parties.

(d) Mutual Right to Terminate for Cause. Either Party may terminate this Agreement immediately by providing written notice to the other Party if the terminating Party determines, in its sole discretion, that the non-terminating Party materially breached any provision of this Agreement, made decisions that negatively reflect on the terminating Party's charitable mission or jeopardize the terminating Party's 501(c)(3) tax-exempt status, or is not in compliance with the highest standards of business ethics and applicable legal requirements.

(e) Liability for Accrued Fees and Expenses. In the event of termination, Prospective Subsidiary shall be obligated to pay PHMC for all Services performed and the expenses and non-cancellable obligations incurred on behalf of Prospective Subsidiary pursuant to this Agreement prior to the effective date of termination.

3. **SERVICES**

(a) Services. PHMC shall provide the services described on the "Description of Services" attached as Exhibit A hereto (the "Services"). The Parties shall review and update the Description of Services in writing as needed. The Description of Services is hereby incorporated into and governed by the terms of this Agreement.

(b) Unforeseen Expenses. PHMC may incur additional costs for Prospective Subsidiary for unforeseeable circumstances affecting staffing, deliverables, and target completion dates ("Unforeseen Expenses"). These matters may require an increased amount of time to resolve and PHMC's hiring of third-party consultants. PHMC shall notify Prospective Subsidiary in advance when this situation occurs and will use best efforts to minimize any Unforeseen Expenses. Prospective Subsidiary shall reimburse PHMC for all Unforeseen Expenses following receipt of an invoice in accordance with Section 5(b).

(c) Qualifications. All Services shall be provided by qualified personnel. Services for which licenses are required shall be provided by duly licensed personnel. PHMC shall have sole responsibility for the selection and qualification of personnel providing Services, and shall promptly remove from the

3829658-4

2

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

provision of Services any personnel who cease to be qualified, or whose necessary license is suspended or revoked.

(d) Compliance with Law. All Services shall be provided in a manner which is in compliance with all applicable federal and state laws and regulations, including the security, privacy, and confidentiality requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and Pennsylvania law governing confidentiality of medical records.

(e) Subcontractor Services. In order for PHMC to provide the Services, and in order to preserve the going concern of Prospective Subsidiary, it is essential that all CUA subcontractors be paid in full, in the ordinary course and consistent with past practice, regardless of when the subcontractor services were rendered, when they are invoiced or when they are payable. PHMC is specifically authorized to make these payments in accordance with the provisions of section 4(a) below, from available cash of the Prospective Subsidiary; provided, however, that PHMC shall in no way itself be liable or deemed to be liable for any direct obligation to pay CUA subcontractors or any other party from funds of PHMC.

(f) Limitation of Services. The Services shall not include performing any functions specifically relating to the possible Chapter 11 case or otherwise managing the bankruptcy process. All such duties and functions relating to the Chapter 11 case shall be reserved to the Prospective Subsidiary's management and directors. Prospective Subsidiary agrees to consult with PHMC regarding material filings in the case, such as (but not limited to) a plan and disclosure statement

## 4. PHMC'S AUTHORITY

(a) Operation of Bank Accounts. PHMC shall be authorized to have access to Prospective Subsidiary's bank accounts in accordance with such principles, as Prospective Subsidiary's board of directors shall approve from time to time. Access to Prospective Subsidiary's bank accounts, and the use of any of Prospective Subsidiary's funds, shall only be for the purpose of meeting ordinary course obligations of Prospective Subsidiary, and shall at all times comply with applicable bankruptcy law and rules.

(b) Collection of Payments from Third Parties. PHMC shall be authorized to collect all amounts due from third parties to Prospective Subsidiary on Prospective Subsidiary's behalf and shall be responsible for establishing efficient procedures for collecting any overdue amounts. All such collections shall be deposited directly into Prospective Subsidiary's bank account.

(c) Intentionally Omitted.

(d) Limitations on PHMC's Authority.
   I.   In addition to any other limitations on PHMC's authority set forth in this Agreement, PHMC shall not, without Prospective Subsidiary's prior written approval, take any of the following actions with respect to Prospective Subsidiary:
      i.   exercise any authority or control over or fiduciary and/or compliance responsibility with respect to any Prospective Subsidiary employee defined benefit plan or Prospective Subsidiary employee defined contribution plan (collectively, the "Retirement Plans");
      ii.  exercise any authority or control over Prospective Subsidiary's line(s) of credit (the "Line of Credit");

3829658 4

3

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

    iii.  exercise any authority or control over Prospective Subsidiary's endowment, quasi-endowment, or board-designated funds; and/or

    iv.  exercise any authority or control over Prospective Subsidiary's interest as beneficiary of any charitable remainder trust, charitable lead trust, or any other trust.

2.    Except as otherwise expressly provided by the terms hereof, Prospective Subsidiary shall be required to take the following actions:

    i.  Prospective Subsidiary will be solely responsible for the preparation and filing of all compliance documents with respect to the Retirement Plans;

    ii.  Prospective Subsidiary will be solely responsible for maintaining compliance with all covenants and terms of the Line of Credit;

    iii.  Prospective Subsidiary will establish and maintain its signatories on all bank accounts to be able to transfer funds online and pay bills as needed.

## 5.  CONSIDERATION

(a)  <u>Fees</u>.  In consideration of the Services to be provided by PHMC under this Agreement, Prospective Subsidiary will pay PHMC a monthly management fee of $59,002 (the "Management Fee").  In addition, Prospective Subsidiary will be required to pay a variable fee based on a monthly computer usage fee of $58,125 for Prospective Subsidiary employees ("Information Technology Support Fee") and collectively with the Information Technology Support Fee, the "Services Fees," the "Unforeseen Expenses" and, together with the Management Fee, the "Fees").  All billing for services rendered by Prospective Subsidiary to third parties shall be in the name of and for the account of Prospective Subsidiary.

(b)  <u>Invoices</u>.  PHMC shall provide Prospective Subsidiary with written monthly invoices of the Fees, and any expenses incurred in connection with the performance of the Services, which shall include, but not be limited to, any Unforeseen Expenses ("Expenses").  Invoices shall be paid by Prospective Subsidiary within thirty (30) days after their receipt.  In the event that legal action is required to collect any Fees or Expenses, Prospective Subsidiary agrees to pay all attorneys' fees and court costs incurred by PHMC in connection with such legal action.

## 6.  ADVANCE FUNDING OF OPERATING EXPENSES AND COSTS

(a)  <u>Intentionally Omitted.</u>

## 7.  REPRESENTATIONS AND WARRANTIES

(a)  <u>Representations and Warranties of Prospective Subsidiary</u>.  Prospective Subsidiary represents and warrants that to the best of its knowledge: (i) it has complied in all respects with all requirements of its grants and its funders, including any governmental funders, (ii) it has obtained and maintained in full force and effect all licenses, permits, and approvals required for the operating of its programs, (iii) it has conducted its programs and maintained its books and records in compliance with all applicable federal, state, and local laws, regulations, and ordinances, (iv) all required IRS Forms 990 and/or Forms 990-T, federal and state employment tax returns, Pennsylvania Charitable Organization Registration Statements (Forms BCO-10), Pennsylvania Nonprofit Corporation Annual Statements (Forms DSCB:15-5110), and other filings required by federal, state, or local laws and regulations or to maintain accreditation and/or compliance with any relevant accrediting or regulatory authority (collectively, the "Compliance Documents") have been prepared and filed in a timely manner with the appropriate federal, state, and/or private agencies as of the Effective Date,

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

and (v) all financial statements and information delivered or provided by it to PHMC are true, correct, and complete, have been prepared in accordance with generally accepted accounting practices, and accurately present the results of Prospective Subsidiary's operations and financial position during the periods covered.

(b) Representations and Warranties of PHMC. PHMC represents and warrants that all financial statements and information delivered or provided by PHMC will be true, correct, and complete, will be prepared in accordance with generally accepted accounting practices, and will accurately present the results of PHMC's operations and financial position during the periods covered.

## 8. COVENANTS OF PROSPECTIVE SUBSIDIARY

Prospective Subsidiary covenants that (i) it will comply in all respects with all requirements of its grants and its funders, including any governmental funders, (ii) it will obtain and maintain in full force and effect all licenses, permits, and approvals required for the operating of its programs, (iii) it will conduct its programs and maintain its books and records in compliance with all applicable federal, state, and local laws, regulations, and ordinances, and (iv) all financial statements and information delivered or provided by it to PHMC will be true, correct, and complete, will be prepared in accordance with generally accepted accounting practices, and will accurately present the results of Prospective Subsidiary's operations and financial position during the periods covered.

## 9. CONFIDENTIALITY AND NONDISCLOSURE

(a) Covenant. Prospective Subsidiary, PHMC, and their respective officers, directors, employees, agents, representatives, and subcontractors shall hold in confidence this Agreement and the information contained in this Agreement, and the Parties hereby acknowledge and agree that all information obtained or disclosed under or related to this Agreement, not otherwise known to the public, is "Confidential and Proprietary Information" and is not to be disclosed to third persons without the prior written consent of each of the Parties except: (i) to the extent necessary to comply with any law, rule, or regulation, including the valid order of any governmental agency or any court of competent jurisdiction; (ii) as part of normal reporting or review procedure, to auditors and attorneys; (iii) to the extent necessary to obtain appropriate insurance, to an insurance agent; (iv) as part of the bankruptcy filing process; or (v) as necessary to enforce rights and perform obligations under this Agreement.

(b) Destruction, Return of Confidential and Proprietary Information. The Parties agree to destroy or return any and all Confidential and Proprietary Information, including all work product, to the other Party on request, or upon the expiration or termination of this Agreement, whichever occurs first.

(c) Relief. A Party failing to hold such Confidential and Proprietary Information confidential, including providing or revealing the Confidential and Proprietary Information to any unauthorized person, in any way, whether written or oral, without the express written consent of the other Party, shall be liable to the injured Party for equitable relief and in damages, including reasonable attorneys' fees and incidental expenses resulting from any such improper use.

## 10. COMPLIANCE DOCUMENTS AND FILINGS

(a) Prospective Subsidiary shall be responsible for the preparation and filing of all Compliance Documents, including, without limitation, any IRS Forms 990, the audit of Prospective Subsidiary's financial statements, all applicable payroll tax filings, all applicable state earned income tax and

3829658-4

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

sales tax filings, all local earned income tax reports and local services tax reports, and all W-2 and W-3 requirements, as well as state filing requirements. Prospective Subsidiary shall name PHMC as payroll agent in order to permit PHMC to assist with the Compliance Documents.

(b) <u>Records.</u> PHMC shall maintain full and adequate records of the business and operations of Prospective Subsidiary, or ensure that such records are maintained at Prospective Subsidiary. Prospective Subsidiary shall be entitled to access to and copies of business records maintained by PHMC pertaining to the business or operations of Prospective Subsidiary. Appropriate personnel of Prospective Subsidiary shall have real time access to operating records of Prospective Subsidiary. PHMC will provide appropriate Prospective Subsidiary personnel reasonable and secure access to all electronically maintained records pertaining to the business or operations of Prospective Subsidiary. In the event of the termination of this Agreement, Prospective Subsidiary shall be entitled, at its reasonable expense, to copies of all business records pertaining to the business or operations of Prospective Subsidiary and shall further be responsible to reimburse PHMC for any fees associated with any reformatting of such electronic records.

(c) <u>Maintenance and Disclosure of Records.</u> . PHMC agrees that for a period of four (4) years following the furnishing of services under this Agreement, PHMC shall maintain and make available, upon written request, to the Secretary of the United States Department of Health and Human Services (HHS) or the Comptroller General of the United States, or to any of their duly authorized representatives, this Agreement and any books, documents and records of or pertaining to Prospective Subsidiary which are necessary to verify the nature and extent of the cost of services provided hereunder. Furthermore, if the PHMC carries out any of the services provided hereunder through any subcontract with a value or cost of Ten Thousand Dollars ($10,000.00) or more over a twelve (12) month period with related organizations (as that term is defined under federal law), PHMC agrees that each such subcontract shall provide for such access to the subcontract, books, documents and records of the subcontractor. If Prospective Subsidiary is requested to disclose books, documents or records pursuant to this Agreement for purposes of an audit, it shall notify PHMC of the nature and scope of such request. These requirements are effective as of the date of execution of this Agreement, and pertain to all records, which have or should have been maintained on or after that date.

## 11. INSURANCE

(a) Prospective Subsidiary, at its own cost and expense, shall maintain general commercial liability insurance and such other insurance as is usual, customary, and applicable to the performance of its obligations under this Agreement. Such other insurance shall include, without limitation, vehicle insurance, errors and omissions insurance, and directors and officers liability insurance. Prospective Subsidiary shall name PHMC as an additional insured on all of its insurance policies and cause the policies to provide that they may not be canceled or terminated without at least ten (10) days advance written notice of cancellation or termination to PHMC. Upon request, Prospective Subsidiary shall provide PHMC with evidence of such insurance.

(b) PHMC, at its own cost and expense, shall maintain general commercial liability insurance and such other insurance as is usual, customary, and applicable to the performance of its obligations under this Agreement.

## 12. LIMITATION OF LIABILITY; INDEMNIFICATION

J829658.4

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

PHMC shall not be liable to Prospective Subsidiary, or to anyone who may claim any right due to its relationship with Prospective Subsidiary (including Prospective Subsidiary's directors, officers, agents, clients, and employees), for any acts or omissions on the part of PHMC or its directors, officers, employees, representatives, and agents in the performance of the Services, except when the acts or omissions are due to PHMC's willful misconduct or gross negligence.

Prospective Subsidiary shall defend, indemnify, and hold harmless PHMC and its officers, directors, employees, agents, representatives, and subcontractors from and against any and all claims, demands, losses, costs, damages, suits, judgments, penalties, expenses, and liabilities of any kind and nature whatsoever, including reasonable attorneys' fees, incurred by PHMC arising out of or in connection with any aspect of Prospective Subsidiary's businesses and activities, including, without limitation, any aspects of Prospective Subsidiary's programs, except to the extent actually caused by PHMC's willful misconduct or gross negligence.

## 13. INDEPENDENT CONTRACTOR

In performing the Services, PHMC will be acting as an independent contractor. Prospective Subsidiary and PHMC agree that neither PHMC nor any of its employees are the employees of Prospective Subsidiary. Prospective Subsidiary and PHMC further agree that Prospective Subsidiary employees are and will remain employees of Prospective Subsidiary and are not and will not be employees of PHMC even though PHMC may have control over them. Nothing contained in this Agreement shall be construed to create a partnership or joint venture between Prospective Subsidiary and PHMC, or to authorize either Prospective Subsidiary or PHMC to act as a general or special agent of the other in any respect, except as specifically set forth in this Agreement; provided, however, that PHMC shall act as payroll agent for Prospective Subsidiary, for federal, state, and local tax purposes.

PHMC acknowledges and agrees that Prospective Subsidiary will not provide fringe benefits, paid vacation, or any other employee benefit for the benefit of PHMC or its agents, subcontractors, and employees. PHMC further acknowledges and agrees that Subsidiary will not withhold federal, state, or local taxes from payments to PHMC and all such taxes, if due, shall be the sole obligation of PHMC

## 14. STANDARDS OF CONDUCT

Each Party agrees it will not engage in any activity that (i) negatively reflects on the other Party's charitable mission, which shall include, without limitation, any activity that prevents or prohibits any individual from utilizing the other Party or any of its services, (ii) jeopardizes the other Party's 501(c)(3) tax-exempt status, or (iii) does not comply with the highest standards of business ethics and applicable legal requirements, including, without limitation, any activity that is deemed to be illegal. In the event that PHMC has determined, in its sole discretion, that (i) Prospective Subsidiary has engaged in any activity that negatively reflects on PHMC's charitable mission, jeopardizes PHMC's 501(c)(3) tax-exempt status, or is not in compliance with the highest standards of business ethics and applicable legal requirements or (ii) Prospective Subsidiary's performance of any term or condition of this Agreement is deemed illegal, PHMC may terminate this Agreement immediately pursuant to Section 2(c). Notwithstanding any other provision in this Agreement, PHMC does not in any manner guarantee any aspect of the conduct or performance of Prospective Subsidiary's programs, and Prospective Subsidiary hereby acknowledges and agrees that PHMC is not responsible for the success or failure of all or any portion of Prospective Subsidiary's programs.

## 15. COMPLIANCE WITH ALL LAWS, REGULATIONS, AND STANDARDS

3829658 4

DocuSign Envelope ID 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

Each Party shall comply with all future and present federal, state, and local statutes, rules, and regulations, and shall procure and maintain any required governmental license or permits, applicable to the performance of its obligations under this Agreement.

## 16. NON-EXCLUSIVITY

Prospective Subsidiary understands and acknowledges that PHMC's charitable activities include management of and assistance to health care providers and may include the provision of services similar to the Services to other organizations like Prospective Subsidiary, with similar programs and projects. Prospective Subsidiary agrees that such activities and functions of PHMC shall not constitute a violation of this Agreement or any obligations of PHMC to Prospective Subsidiary.

## 17. MISCELLANEOUS

(a) Entire Agreement. This Agreement and its Exhibits attached hereto constitute the sole agreement between the Parties with respect to the subject matter hereof and can only be changed by an instrument signed by an authorized representative of each Party. A waiver by any Party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future or of any subsequent breach thereof.

(b) Authority. Each Party represents and warrants that it has the full and unencumbered right to enter into this Agreement and to perform its obligations hereunder.

(c) Trademark. Prospective Subsidiary grants to PHMC a non-exclusive, nontransferable, and non-sublicensable right to use Prospective Subsidiary's trade and service marks in connection with the provision of the Services.

(d) Headings. Section headings are for convenience of reference only and shall not be used to construe the meaning of any provision of this Agreement.

(e) Severability. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court of competent jurisdiction finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

(f) Survival. The provisions of Sections 9, 10, 12, and 17 shall survive the termination of this Agreement.

(g) Remedies. With respect to this Agreement, each Party shall have and may exercise all remedies available to it under applicable law, with no remedy being exclusive and all remedies being cumulative.

(h) Notices. Any notice herein required or permitted to be given by any Party shall be deemed sufficiently given when sent by e-mail, facsimile with a printed confirmation generated by the sending fax machine, personal delivery, or by a nationally recognized overnight delivery service. Notices shall be deemed to have been given if and when sent via e-mail and facsimile or personally delivered, or one (1) business day after delivery by a nationally recognized overnight delivery service, to the following addresses (or to such other address as a Party may hereafter designate for itself by notice to the other Party):

If to Prospective Subsidiary:
Wordsworth Academy

J829658 4

8

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

3300 Henry Avenue
Philadelphia, PA 19129
dstewart@wordsworth.org
ATTN: Don Stewart, CFO


If to PHMC:
Centre Square East
1500 Market Street, Suite 1500
Philadelphia, PA 19102
Puliti@phmc.org
ATTN: Marino Puliti, CFO

(i) <u>Assignment</u>. Neither Party may assign or otherwise transfer this Agreement; <u>provided</u>, <u>however</u>, that PHMC may, in its sole discretion and upon notice to Prospective Subsidiary, assign its rights and obligations under this Agreement to a subsidiary or Prospective Subsidiary organization of PHMC.

(j) <u>Governing Law</u>. This Agreement shall be governed by, and interpreted and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without reference to principles of conflicts of law.

(k) <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall constitute an original and both of which shall constitute one and the same instrument.

*(remainder of page intentionally left blank, signature page follows)*

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

IN WITNESS WHEREOF, the Parties have caused this Transition Management Agreement to be executed as of the date first above written.

**WORDSWORTH ACADEMY**

**PUBLIC HEALTH MANAGEMENT CORPORATION**

By: Tom Johnson

Name: Tom Johnson

Title: Chairman

By: _____

Name: RJ Cohen

Title: Pres

**Exhibit A:**      Description of Services

3829658·4

10

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

## Exhibit A

### Description of Services

| | | |
|---|---|---|
| | | Public Health Management Corporation |
| | | Statement of Work - FY18 - Management Contract (Transition) |
| | | PHMC -Wordsworth |
| | | EXHIBIT A - BASIC SERVICES |
| ecutive anagement | A | Provide overall strategic leadership, direction and alignment between Wordsworth and PHMC |
| | 1 | Provide strategic support to Wordsworth |
| | 2 | Support the on-going integration of Wordsworth as an affiliate of PHMC |
| | 3 | Provide legal perspective/direction on strategic matters |
| | B | Maximize opportunities for funding |
| | 1 | Assistance with Mergers and Affiliation Strategies and Execution |
| | 2 | Maximize opportunities for staff promotion and development |
| | 3 | Relationship development and management |
| | 4 | Provide support with executive transition, recruitment and management |
| | C | Provide executive level support to Wordsworth |
| | 1 | Ensure quality, timely provision of customer service to Wordsworth |
| | 2 | Provide staff supervision and recommendations for staffing patterns |
| | 3 | Support Board development |
| | 4 | Provide support and supervision to Senior level management |
| cal Management | A | Leadership, direction and alignment |
| | 1 | Provide fiscal management time to supervise fiscal staff efforts and to assist Wordsworth in developing corporate strategies and direction concerning budget development, negotiations, budget allocations, and recommendations for staffing patterns |
| | B | Contract processing/Budgeting |

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

| | | |
|---|---|---|
| 1 | | Provide multilevel contract review and administration to include signature bucking, mailing, and contract tracking. |
| 2 | | Review and approve budgets for current and proposed programs |
| C | | Audit |
| 1 | | Review and approve annual audit before it is finalized |
| 2 | | Wordsworth staff must keep PHMC informed of any issues that arise during audit |
| D | | Purchasing |
| 1 | | Review and approve insurance coverage and limits of liability and policies |

...man Resources

| | | |
|---|---|---|
| A | | General Human Resources |
| 1 | | Provide Human Resources time to supervise HR staff efforts and to assist Wordsworth in developing corporate strategies and direction concerning HR development, negotiations,  incidents, and recommendations for staffing patterns |

...gram
...anagement

| | | |
|---|---|---|
| A | | General Program Management |
| 1 | | Provide Program Management time to supervise program staff efforts and to assist Wordsworth in developing corporate strategies and direction concerning program development, negotiations, operational plans, budgeting, and recommendations for staffing patterns |

...gram
...velopment and
...ndraising

| | | |
|---|---|---|
| A | | Promote Program Collaboration |
| 1 | | Assist in new  program development focused on cross-program/Wordsworth project: |
| 2 | | Support cultivation of relationships across Wordsworth and affiliates in order to expand potential funding resources |
| 3 | | Research potential new program partners |
| 4 | | Set up meetings with potential program partners, affiliates, and Wordsworth |
| B | | Fundraising |
| 1 | | Research potential grant opportunities |

J829658 4

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

| | 2 | Meet with Wordsworth to discuss and strategize potential grant opportunities |
| | 3 | Work to develop and maintain relationships with funders and PHMC management |
| ...arketing and mmunications | | |
| | A | Alignment Activities |
| | 1 | High-level strategic communications planning, i.e. how Wordsworth fits into PHMC's story |
| | 2 | Co-branding strategy, logo and brand guide creation upon inital Affiliation |
| | 3 | Announcement communications - strategy, materials development, internal/externa communications, events, media relations |
| | 4 | General consultation on communications/marketing plan and approach |
| | B | General Communications Activities |
| | 1 | Integration of affiliate news into PHMC channels - PHMC.org, Matrix, Intranet, Public Health Directions, Annual Report, PR, Social Media, Annual Meeting/other events, etc. |
| | 2 | Website stabilization: management and maintenance (not including upgrade/migration/new versions) |
| | 3 | Media relations - high-level media relations as part of PHMC family; reactive media relations and crisis communications. Coordination of all PR activities with PHMC. |
| ...ality | | |
| | A | Continuous Quality Improvement (CQI) |
| | 1 | Provide oversight in the development with program quality indicators; dashboard, and recommendations for staffing patterns |
| | 2 | Train team on CQI process and rapid cycle improvement |
| | B | Regulatory Oversight |
| | 1 | Standardize, update, and maintain ongoing audit monitoring tools for each funder/regulatory agency. |
| | 2 | Implement continuous survey readiness on an ongoing basis using the above tools, providing feedback to program. |
| | 3 | Standardize monitoring audit findings to program and obtain corrective action of internal audits. |
| | 4 | Train program staff on audit tools, process, and expectations |
| | C | Risk Management |

38246584

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4 553E509F2CF0

| 1 | Train staff on the incident reporting model used at PHMC |
| 2 | Report incident trends, participant grievances, and root cause analysis to the Risk Management Committee and programs |
| 3 | Conduct focused reviews on trends noted. |
| 4 | Conduct Root Cause Analysis (RCAs) or investigation on egregious events. |
| 5 | ***If RCA or investigation is completed by program staff (not by TQM), then the program will send the results and follow-up information to TQM for monitoring Monitor participant grievances and oversee the resulting corrective action plans. |

### ormation Systems

| 1 | Managed Backup Services |
| 1a | PHMC backup solution configuration, monitoring, maintenance and storage |
| 2 | Managed Email Filtering |
| 2a | Separate mail host email filtering services, maintenance and monitoring |
| 3 | Datacenter Management and Integration |
| 4 | VoIP Phone System Integration |
| 5 | Managed Website and Content Filtering |
| 6 | Encrypted Email Services |
| 7 | Electronic Faxing |
| 8 | Security Audit/Analysis and Technical Risk Assessments |
| 9 | Server Infrastructure Monitoring and Support (only with MPLS integration) |
| 10 | Switching and Routing Support |
| 11 | Operating System Updates and selected third party updates (only with MPLS integration) |
| 12 | Managed Antivirus Application and Support |
| 13 | Hardware and Software Procurement |
| 14 | Mobile Device Technologies |
| 15 | Internet Services |
| 16 | MFD Consolidation |
| 17 | Technical Project Management |

J829658-4

DocuSign Envelope ID: 4CC92C9A-BBE7-4B81-8DA4-553E509F2CF0

| | 18 | Managed Backup Services |
|---|---|---|
| | 18a | Basic Backup assessment and monitoring of non-PHMC service |
| | 19 | Managed Email Filtering |
| | 19a | PHMC hosted email services mail filtering |
| | 20 | Provide IS perspective / direction on application, technical and integration matters |
| al Estate & :ilities | 1 | Real estate Consulting:  Acquisitions/Dispositions |
| | 2 | Lease Administration:  Manage renewals, options, landlord communications |
| | 3 | Provide overall real estate strategic support and direction |
| | 4 | Provide recommendations for staffing patterns |
| ʒal Consultation | 1 | Negotiate, write and execute agreements and contracts. |
| | 2 | Provide legal support for real estate negotiation and review. |
| | 3 | Assist with legal review, negotiation and drafting of loan documentation. |
| | 4 | Support general legal needs in-house and with external legal counsel. |
| | 5 | Act as a liaison with landlords on an as-needed basis. |
| | 6 | Explain legal language. |
| | 7 | Research unique legal issues impacting organization by identifying applicable statutes, codes, judicial decisions. |
| | 8 | Perform pre-litigation work to minimize risks and maximize legal rights. |
| | 9 | Advise on contract status, legal risks and business terms of various deals. |
| | 10 | Offer counsel on a variety of legal issues. |

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

# TRANSITION MANAGEMENT AGREEMENT

This Transition Management Agreement (the "Agreement") is made this 26th day of June 2017 (the "Effective Date"), by and between Wordsworth CUA 5, LLC , a Pennsylvania nonprofit limited liability company with an address at 3300 Henry Avenue, Falls Center, Philadelphia, PA 19129 and Wordsworth CUA 10, LLC, a Pennsylvania nonprofit limited liability company with an address at 3300 Henry Avenue, Falls Center, Philadelphia, PA 19129 (collectively called "Prospective Subsidiary"), and Turning Points for Children, a Pennsylvania nonprofit corporation with an address at 415 South 15th Street, Philadelphia, PA, 19146 ("TPFC"). Prospective Subsidiary and TPFC will be referred to individually as a "Party" and together as the "Parties" herein.

WHEREAS, each Prospective Subsidiary is a limited liability company classified as a disregarded organization of a non-profit corporation tax-exempt under Section 501(c)(3) and Section 501(a) of the Internal Revenue Code of 1986, as amended (the "Code"), whose mission is to provide quality education, treatment, and care to children and families with special needs and will become a subsidiary of TPFC pursuant to an affiliation agreement by and between TPFC's sole member, Public Health Management Corporation and Prospective Subsidiary dated as of June 26, 2017 ("Affiliation Agreement"); and

WHEREAS, TPFC is an organization described in Section 501(c)(3) of the Code that is exempt from federal income tax pursuant to Section 501(a) of the Code whose mission is to, among other things, to provide effective means for the prevention of cruelty and neglect to children, to provide services to and for children and families, to aid and cooperate in the protection of families, and to aid in the enforcement of all laws heretofore or hereafter enacted for the protection and care of children and other related activities, and will become the sole member of Prospective Subsidiary; and

WHEREAS, Prospective Subsidiary has requested that TPFC provide and TPFC has agreed to provide management, information technology, computer usage, and training services to Prospective Subsidiary as of the Effective Date and pending the potential change in control in the Prospective Subsidiary contemplated in the impending Affiliation Agreement and the Chapter 11 proceedings set forth by the Affiliation Agreement (the "Related Chapter 11 Proceedings").

WHEREAS, the Parties have discussed that Prospective Subsidiary intends to file a Chapter 11 petition following the implementation of this Agreement, and that Prospective Subsidiary intends to file a motion to assume this Agreement at the same time as the petition is filed.

NOW, THEREFORE, the Parties, intending to be legally bound hereby, covenant and agree as follows:

## 1. LIMITATION OF DUTY

Prospective Subsidiary hereby engages TPFC and TPFC agrees to provide the Services (as defined in Section 3(a)) on behalf of, and for the account of, Prospective Subsidiary in accordance with the terms of this Agreement. Prospective Subsidiary hereby acknowledges and agrees that the activities of TPFC pursuant to this Agreement are not intended and shall not be construed to relieve persons serving, from time to time, as Prospective Subsidiary's directors, officers, and employees of their fiduciary duties, if any, to Prospective Subsidiary pursuant to the Pennsylvania Nonprofit Corporation Act of 1988, any other federal or state law or regulation, or any obligations and/or duties that they owe to Prospective Subsidiary pursuant to Prospective Subsidiary's policies and procedures and/or any agreement with Prospective Subsidiary.

3829873.3

1

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

2.  **TERM AND TERMINATION**

(a)  Term.  The term of this Agreement shall be for a period commencing on the Effective Date and extending through November 1, 2017 (the "Initial Term") and, provided that the Related Chapter 11 Proceedings remain open, shall automatically extend on a monthly basis at the end of the Initial Term until otherwise terminated as provided for herein.

(b)  Optional Termination for Failure to Timely Consummate Affiliation Agreement.  If within one hundred eighty (180) days of the Effective Date, TPFC fails to become the sole member of Prospective Subsidiary pursuant to a new management agreement executed by the Parties in connection with the Affiliation Agreement and the Related Chapter 11 Proceedings, then at the option of either Prospective Subsidiary or TPFC, either party may terminate this Agreement upon notice to the other.

(c)  Termination Generally.  This Agreement shall terminate immediately upon the earlier of (i) the date a new management agreement is executed between the Parties as contemplated by the Affiliation Agreement and the Related Chapter 11 Proceedings; (ii) upon Prospective Subsidiary's receipt of written notice from TPFC that TPFC has determined, in its sole discretion, that Prospective Subsidiary has failed or is unable to pay the Fees (as defined in Section 5(a)); or (iii) the mutual termination of an intent to establish an affiliation relationship between the Parties.

(d)  Mutual Right to Terminate for Cause.  Either Party may terminate this Agreement immediately by providing written notice to the other Party if the terminating Party determines, in its sole discretion, that the non-terminating Party materially breached any provision of this Agreement, made decisions that negatively reflect on the terminating Party's charitable mission or jeopardize the terminating Party's 501(c)(3) tax-exempt status, or is not in compliance with the highest standards of business ethics and applicable legal requirements.

(e)  Liability for Accrued Fees and Expenses.  In the event of termination, Prospective Subsidiary shall be obligated to pay TPFC for all Services performed and the expenses and non-cancellable obligations incurred on behalf of Prospective Subsidiary pursuant to this Agreement prior to the effective date of termination.

3.  **SERVICES**

(a)  Services.  TPFC shall provide the services described on the "Description of Services" attached as Exhibit A hereto (the "Services").  The Parties shall review and update the Description of Services in writing as needed.  The Description of Services is hereby incorporated into and governed by the terms of this Agreement.

(b)  Unforeseen Expenses.  TPFC may incur additional costs for Prospective Subsidiary for unforeseeable circumstances affecting staffing, deliverables, and target completion dates ("Unforeseen Expenses").  These matters may require an increased amount of time to resolve and TPFC's hiring of third-party consultants.  TPFC shall notify Prospective Subsidiary in advance when this situation occurs and will use best efforts to minimize any Unforeseen Expenses.  Prospective Subsidiary shall reimburse TPFC for all Unforeseen Expenses following receipt of an invoice in accordance with Section 5(b).

3829873 3

2

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

(c) <u>Qualifications.</u> All Services shall be provided by qualified personnel. Services for which licenses are required shall be provided by duly licensed personnel. TPFC shall have sole responsibility for the selection and qualification of personnel providing Services, and shall promptly remove from the provision of Services any personnel who cease to be qualified, or whose necessary license is suspended or revoked.

(d) <u>Compliance with Law.</u> All Services shall be provided in a manner which is in compliance with all applicable federal and state laws and regulations, including the security, privacy, and confidentiality requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and Pennsylvania law governing confidentiality of medical records.

(e) <u>Subcontractor Services.</u> *and staffing company* In order for TPFC to provide the Services, and in order to preserve the *and staffing companies* going concern of Prospective Subsidiary, it is essential that all CUA subcontractors be paid in full, in the ordinary course and consistent with past practice, regardless of when the subcontractor services were rendered, *or staffing companies services* when they are invoiced or when they are payable. TPFC is specifically authorized to make these payments from available cash of the Prospective Subsidiary; provided, however, that TPFC shall in no way itself be liable or deemed to be liable for any direct obligation to pay CUA subcontractors or any other party from funds of TPFC. *or staffing Companies*

(f) <u>Limitation of Services.</u> The Services shall not include performing any functions specifically relating to the possible Chapter 11 case or otherwise managing the bankruptcy process. All such duties and functions relating to the Chapter 11 case shall be reserved to the Prospective Subsidiary's management and directors. Prospective Subsidiary agrees to consult with TPFC regarding material filings in the case, such as (but not limited to) a plan and disclosure statement

4.  **INTENTIONALLY OMITTED**

5.  **CONSIDERATION**

(a) <u>Fees.</u> In consideration of the Services to be provided by TPFC under this Agreement, Prospective Subsidiary will pay TPFC a monthly management fee of $15,234.50 (the "Management Fee") (collectively the "Unforeseen Expenses" and, together with the Management Fee, the "Fees"). All billing for services rendered by Prospective Subsidiary to third parties shall be in the name of and for the account of Prospective Subsidiary.

(b) <u>Invoices.</u> TPFC shall provide Prospective Subsidiary with written monthly invoices of the Fees, and any expenses incurred in connection with the performance of the Services, which shall include, but not be limited to, any Unforeseen Expenses ("Expenses"). Invoices shall be paid by Prospective Subsidiary within thirty (30) days after their receipt. In the event that legal action is required to collect any Fees or Expenses, Prospective Subsidiary agrees to pay all attorneys' fees and court costs incurred by TPFC in connection with such legal action.

6.  **INTENTIONALLY OMITTED**

7.  **REPRESENTATIONS AND WARRANTIES**

(a) <u>Representations and Warranties of Prospective Subsidiary.</u> Prospective Subsidiary represents and warrants that to the best of its knowledge: (i) it has complied in all respects with all requirements of its grants and its funders, including any governmental funders, (ii) it has obtained and maintained in

3829873 3

3

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

full force and effect all licenses, permits, and approvals required for the operating of its programs, (iii) it has conducted its programs and maintained its books and records in compliance with all applicable federal, state, and local laws, regulations, and ordinances, (iv) all required IRS Forms 990 and/or Forms 990-T, federal and state employment tax returns, Pennsylvania Charitable Organization Registration Statements (Forms BCO-10), Pennsylvania Nonprofit Corporation Annual Statements (Forms DSCB:15-5110), and other filings required by federal, state, or local laws and regulations or to maintain accreditation and/or compliance with any relevant accrediting or regulatory authority (collectively, the "Compliance Documents") have been prepared and filed in a timely manner with the appropriate federal, state, and/or private agencies as of the Effective Date, and (v) all financial statements and information delivered or provided by it to TPFC are true, correct, and complete, have been prepared in accordance with generally accepted accounting practices, and accurately present the results of Prospective Subsidiary's operations and financial position during the periods covered.

(b) Representations and Warranties of TPFC. TPFC represents and warrants that all financial statements and information delivered or provided by TPFC will be true, correct, and complete, will be prepared in accordance with generally accepted accounting practices, and will accurately present the results of TPFC's operations and financial position during the periods covered.

## 8. COVENANTS OF PROSPECTIVE SUBSIDIARY

(a) Prospective Subsidiary covenants that (i) it will comply in all respects with all requirements of its grants and its funders, including any governmental funders, (ii) it will obtain and maintain in full force and effect all licenses, permits, and approvals required for the operating of its programs, (iii) it will conduct its programs and maintain its books and records in compliance with all applicable federal, state, and local laws, regulations, and ordinances, (iv) it will pay CUA subcontractors in full in the ordinary course of business since their uninterrupted services are essential to the CUA's operations; and (v) all financial statements and information delivered or provided by it to TPFC will be true, correct, and complete, will be prepared in accordance with generally accepted accounting practices, and will accurately present the results of Prospective Subsidiary's operations and financial position during the periods covered.

## 9. CONFIDENTIALITY AND NONDISCLOSURE

(b) Covenant. Prospective Subsidiary, TPFC, and their respective officers, directors, employees, agents, representatives, and subcontractors shall hold in confidence this Agreement and the information contained in this Agreement, and the Parties hereby acknowledge and agree that all information obtained or disclosed under or related to this Agreement, not otherwise known to the public, is "Confidential and Proprietary Information" and is not to be disclosed to third persons without the prior written consent of each of the Parties except: (i) to the extent necessary to comply with any law, rule, or regulation, including the valid order of any governmental agency or any court of competent jurisdiction; (ii) as part of normal reporting or review procedure, to auditors and attorneys; (iii) to the extent necessary to obtain appropriate insurance, to an insurance agent; (iv) as part of the bankruptcy filing process; or (v) as necessary to enforce rights and perform obligations under this Agreement.

(c) Destruction, Return of Confidential and Proprietary Information. The Parties agree to destroy or return any and all Confidential and Proprietary Information, including all work product, to the other Party on request, or upon the expiration or termination of this Agreement, whichever occurs first.

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

(d) Relief. A Party failing to hold such Confidential and Proprietary Information confidential, including providing or revealing the Confidential and Proprietary Information to any unauthorized person, in any way, whether written or oral, without the express written consent of the other Party, shall be liable to the injured Party for equitable relief and in damages, including reasonable attorneys' fees and incidental expenses resulting from any such improper use.

## 10. COMPLIANCE DOCUMENTS AND FILINGS

(a) Prospective Subsidiary shall be responsible for the preparation and filing of all Compliance Documents, including, without limitation, any IRS Forms 990, the audit of Prospective Subsidiary's financial statements, all applicable payroll tax filings, all applicable state earned income tax and sales tax filings, all local earned income tax reports and local services tax reports, and all W-2 and W-3 requirements, as well as state filing requirements. Prospective Subsidiary shall name TPFC as payroll agent in order to permit TPFC to assist with the Compliance Documents.

(b) Records. TPFC shall maintain full and adequate records of the business and operations of Prospective Subsidiary, or ensure that such records are maintained at Prospective Subsidiary. Prospective Subsidiary shall be entitled at any time to access to and copies of business records maintained by TPFC pertaining to the business or operations of Prospective Subsidiary. Appropriate personnel of Prospective Subsidiary shall have real time access to operating records of Prospective Subsidiary. TPFC will provide appropriate Prospective Subsidiary personnel reasonable and secure access to all electronically maintained records pertaining to the business or operations of Prospective Subsidiary. In the event of the termination of this Agreement, Prospective Subsidiary shall be entitled, at its reasonable expense, to copies of all business records pertaining to the business or operations of Prospective Subsidiary and shall further be responsible to reimburse TPFC for any fees associated with any reformatting of such electronic records.

(c) Maintenance and Disclosure of Records. TPFC agrees that for a period of four (4) years following the furnishing of services under this Agreement, TPFC shall maintain and make available, upon written request, to the Secretary of the United States Department of Health and Human Services (HHS) or the Comptroller General of the United States, or to any of their duly authorized representatives, this Agreement and any books, documents and records of or pertaining to Prospective Subsidiary which are necessary to verify the nature and extent of the cost of services provided hereunder. Furthermore, if the TPFC carries out any of the services provided hereunder through any subcontract with a value or cost of Ten Thousand Dollars ($10,000.00) or more over a twelve (12) month period with related organizations (as that term is defined under federal law), TPFC agrees that each such subcontract shall provide for such access to the subcontract, books, documents and records of the subcontractor. If Prospective Subsidiary is requested to disclose books, documents or records pursuant to this Agreement for purposes of an audit, it shall notify TPFC of the nature and scope of such request. These requirements are effective as of the date of execution of this Agreement, and pertain to all records, which have or should have been maintained on or after that date.

## 11. INSURANCE

(a) Prospective Subsidiary, at its own cost and expense, shall maintain general commercial liability insurance and such other insurance as is usual, customary, and applicable to the performance of its obligations under this Agreement. Such other insurance shall include, without limitation, vehicle insurance, errors and omissions insurance, and directors' and officers' liability insurance. Prospective Subsidiary shall name TPFC as an additional insured on all of its insurance policies and

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

cause the policies to provide that they may not be canceled or terminated without at least ten (10) days advance written notice of cancellation or termination to TPFC. Upon request, Prospective Subsidiary shall provide TPFC with evidence of such insurance.

(b) TPFC, at its own cost and expense, shall maintain general commercial liability insurance and such other insurance as is usual, customary, and applicable to the performance of its obligations under this Agreement.

## 12. LIMITATION OF LIABILITY; INDEMNIFICATION

TPFC shall not be liable to Prospective Subsidiary, or to anyone who may claim any right due to its relationship with Prospective Subsidiary (including Prospective Subsidiary's directors, officers, agents, clients, and employees), for any acts or omissions on the part of TPFC or its directors, officers, employees, representatives, and agents in the performance of the Services, except when the acts or omissions are due to TPFC's willful misconduct or gross negligence.

Prospective Subsidiary shall defend, indemnify, and hold harmless TPFC and its officers, directors, employees, agents, representatives, and subcontractors from and against any and all claims, demands, losses, costs, damages, suits, judgments, penalties, expenses, and liabilities of any kind and nature whatsoever, including reasonable attorneys' fees, incurred by TPFC arising out of or in connection with any aspect of Prospective Subsidiary's businesses and activities, including, without limitation, any aspects of Prospective Subsidiary's programs, except to the extent actually caused by TPFC's willful misconduct or gross negligence.

## 13. INDEPENDENT CONTRACTOR

In performing the Services, TPFC will be acting as an independent contractor. Prospective Subsidiary and TPFC agree that neither TPFC nor any of its employees are the employees of Prospective Subsidiary. Prospective Subsidiary and TPFC further agree that Prospective Subsidiary employees are and will remain employees of Prospective Subsidiary and are not and will not be employees of TPFC even though TPFC may have control over them. Nothing contained in this Agreement shall be construed to create a partnership or joint venture between Prospective Subsidiary and TPFC, or to authorize either Prospective Subsidiary or TPFC to act as a general or special agent of the other in any respect, except as specifically set forth in this Agreement; provided, however, that TPFC shall act as payroll agent for Prospective Subsidiary, for federal, state, and local tax purposes.

TPFC acknowledges and agrees that Prospective Subsidiary will not provide fringe benefits, paid vacation, or any other employee benefit for the benefit of TPFC or its agents, subcontractors, and employees. TPFC further acknowledges and agrees that Subsidiary will not withhold federal, state, or local taxes from payments to TPFC and all such taxes, if due, shall be the sole obligation of TPFC

## 14. STANDARDS OF CONDUCT

Each Party agrees it will not engage in any activity that (i) negatively reflects on the other Party's charitable mission, which shall include, without limitation, any activity that prevents or prohibits any individual from utilizing the other Party or any of its services, (ii) jeopardizes the other Party's 501(c)(3) tax-exempt status, or (iii) does not comply with the highest standards of business ethics and applicable legal requirements, including, without limitation, any activity that is deemed to be illegal. In the event that TPFC has determined, in its sole discretion, that (i) Prospective Subsidiary has engaged in any activity that negatively reflects on TPFC's charitable mission, jeopardizes TPFC's 501(c)(3) tax-

3829873.3

6

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

exempt status, or is not in compliance with the highest standards of business ethics and applicable legal requirements or (ii) Prospective Subsidiary's performance of any term or condition of this Agreement is deemed illegal, TPFC may terminate this Agreement immediately pursuant to Section 2(c). Notwithstanding any other provision in this Agreement, TPFC does not in any manner guarantee any aspect of the conduct or performance of Prospective Subsidiary's programs, and Prospective Subsidiary hereby acknowledges and agrees that TPFC is not responsible for the success or failure of all or any portion of Prospective Subsidiary's programs.

## 15. COMPLIANCE WITH ALL LAWS, REGULATIONS, AND STANDARDS

Each Party shall comply with all future and present federal, state, and local statutes, rules, and regulations, and shall procure and maintain any required governmental license or permits, applicable to the performance of its obligations under this Agreement.

## 16. NON-EXCLUSIVITY

Prospective Subsidiary understands and acknowledges that TPFC's charitable activities include management of and assistance to health care providers and may include the provision of services similar to the Services to other organizations like Prospective Subsidiary, with similar programs and projects. Prospective Subsidiary agrees that such activities and functions of TPFC shall not constitute a violation of this Agreement or any obligations of TPFC to Prospective Subsidiary.

## 17. MISCELLANEOUS

(a) Entire Agreement. This Agreement and its Exhibits attached hereto constitute the sole agreement between the Parties with respect to the subject matter hereof and can only be changed by an instrument signed by an authorized representative of each Party. A waiver by any Party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future or of any subsequent breach thereof.

(b) Authority. Each Party represents and warrants that it has the full and unencumbered right to enter into this Agreement and to perform its obligations hereunder.

(c) Trademark. Prospective Subsidiary grants to TPFC a non-exclusive, nontransferable, and non-sublicensable right to use Prospective Subsidiary's trade and service marks in connection with the provision of the Services.

(d) Headings. Section headings are for convenience of reference only and shall not be used to construe the meaning of any provision of this Agreement.

(e) Severability. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court of competent jurisdiction finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

(f) Survival. The provisions of Sections 9, 10, 12, and 17 shall survive the termination of this Agreement.

(g) Remedies. With respect to this Agreement, each Party shall have and may exercise all remedies available to it under applicable law, with no remedy being exclusive and all remedies being cumulative.

3829873.3

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

(h) <u>Notices</u>. Any notice herein required or permitted to be given by any Party shall be deemed sufficiently given when sent by e-mail, facsimile with a printed confirmation generated by the sending fax machine, personal delivery, or by a nationally recognized overnight delivery service. Notices shall be deemed to have been given if and when sent via e-mail and facsimile or personally delivered, or one (1) business day after delivery by a nationally recognized overnight delivery service, to the following addresses (or to such other address as a Party may hereafter designate for itself by notice to the other Party):

> If to Prospective Subsidiary:
> Wordsworth CUA 5, LLC
> Wordsworth CUA 10, LLC
> 3300 Henry Avenue
> Philadelphia, PA 19129
> dstewart@wordsworth.org
> ATTN: Don Stewart, CFO

> If to TPFC:
> Turning Points for Children
> 415 South 15th Street
> Philadelphia, PA 19146
> ATTN: Dawn Holden, CFO

> With a copy to:
> Public Health Management Corporation
> LM 1500
> 1500 Market Street
> Philadelphia, PA 19102
> Attn: Marino Puliti, CFO

(i) <u>Assignment</u>. Neither Party may assign or otherwise transfer this Agreement; <u>provided</u>, <u>however</u>, that TPFC may, in its sole discretion and upon notice to Prospective Subsidiary, assign its rights and obligations under this Agreement to a subsidiary or Prospective Subsidiary organization of TPFC.

(j) <u>Governing Law</u>. This Agreement shall be governed by, and interpreted and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without reference to principles of conflicts of law.

(k) <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall constitute an original and both of which shall constitute one and the same instrument.

<em>(remainder of page intentionally left blank, signature page follows)</em>

3429873.3

IN WITNESS WHEREOF, the Parties have caused this Management Agreement to be executed as of the date first above written.

**WORDSWORTH CUA 5, LLC**

By:
Name:
Title:

**WORDSWORTH CUA 10, LLC**

By:
Name:
Title:

**TURNING POINTS FOR CHILDREN**

By:
Name: MICHAEL Voith
Title: CEO

**Exhibit A:**    Description of Services

9

DocuSign Envelope ID: D731F586-3B90-4A12-A351-A76B4EC63DE7

<u>Exhibit A</u>

Description of Services

**Statement of Work - FY18 - Management Contract (Transition)**
**Turning Points for Children**

**EXHIBIT A - BASIC SERVICES**
Turning Points for Children will provide the following Basic Services to Wordsworth CUA 5, LLC
Wordsworth CUA 10 LLC, and Wordsworth's Foster Care Program

| | | |
|---|---|---|
| **Executive Management** | A | Provide overall strategic leadership, direction and alignment between Wordsworth and TPFC |
| 1 | | Provide strategic support to Wordsworth |
| 2 | | Support the on-going integration of Wordsworth as an affiliate of TPFC |
| 3 | | Provide legal perspective/direction on strategic matters |
| | | |
| B | | Maximize opportunities for funding |
| 1 | | Assistance with Mergers and Affiliation Strategies and Execution |
| 2 | | Maximize opportunities for staff promotion and development |
| 3 | | Relationship development and management |
| 4 | | Provide support with executive transition, recruitment and management |
| C | | Provide executive level support to Wordsworth |
| 1 | | Ensure quality, timely provision of customer service to Wordsworth |
| 2 | | Provide staff supervision and recommendations for staffing patterns |
| 3 | | Support Board development |
| 4 | | Provide support and supervision to Senior level management |

**Program Management**

| | | |
|---|---|---|
| A | | General |
| | | Provide Program Management time to supervise program staff efforts and to assist Wordsworth in developing corporate strategies and direction concerning program development, negotiations, operational plans, budgeting, and recommendations for staffing patterns. |

3829873.3